**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------- X

**NATE MCMURRAY, a Candidate for Congress and as**
**an Enrolled Democratic Party Voter In Erie County,**
**PAULINE GRABEKI, as an Enrolled Republican Party**
**Voter in Erie County, and RONALD COONS, as an**
**Enrolled Democratic Party Voter in Erie County,**
**individually and on behalf of a Class of Erie County**
**Voters Similarly Situated,**

                           **Case No. 20-cv-3547**

                        **Plaintiffs,**

               **- against –**

**RALPH M. MOHR and JEREMY J. ZELLNER,**
**individually and as COMMISSIONERS of the ERIE**
**COUNTY BOARD OF ELECTIONS, and the ERIE**
**COUNTY BOARD OF ELECTIONS,**

                        **Defendants**

------------------------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A TEMPORARY**
**RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Arthur Z. Schwartz, Esq.
ADVOCATES FOR JUSTICE,
CHARTERED ATTORNEYS
*Attorneys for Plaintiffs*
225 Broadway, Suite 1902
New York, New York 10007
Phone: 212-285-1410
Fax: 212-285-1410
Email: aschwartz@afjlaw.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ................................................................................................... 1

JURISDICTION ..................................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 1

ARGUMENT ......................................................................................................... 6

  POINT I:  ABSTENTION IS NOT REQUIRED ........................................................ 6

  POINT II:  PLAINTIFFS MEET THIS COURT'S TRO AND PRELIMINARY
  INJUNCTION LEGAL STANDARD ....................................................................... 9

    A.   AN INJUNCTION IS REQUIRED TO PROTECT PLAINTIFFS' AND PLAINTIFFS'
    CLASS' FIRST AMENDMENT RIGHTS UNDER THE U.S. CONSTITUTION ......................... 10

    B.   PLAINTIFFS' CLAIM IS MERITORIOUS ....................................................... 12

    C.   THE PLAINTIFFS HAVE SUFFERED IRREPARABLE INJURY ......................................... 12

  POINT III:  PLAINTIFFS' MERITORIOUS CLAIMS REQUIRE THAT AN
  INJUNCITON BE ISSUED ................................................................................. 12

CONCLUSION.................................................................................................... 14

## **TABLE OF AUTHORITIES**

### **Cases**

*Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) ......................... 11

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 117 S.Ct. 1055,
137 L.Ed.2d 170 (1997) ........................................................................ 7

*Disability Rights New York v. New York*, 916 F.3d 129 (2d Cir. 2019) ........................ 7

*EH Fusion Party v. Suffolk County Board of Elections*, 401 F.Supp.3d 376
(E.D.N.Y., 2019) ................................................................................ 6

*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) ......................... 9

*Farrell v. Board of Elections in City of New York*, 1985 WL 2339 (SDNY 1985) ....................... 8

*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 143
(2d Cir. 2016) .................................................................................. 9

*Gangemi v. Sclafani*, 506 F.2d 570 (2d Cir. 1974) ..................................................... 7

*Growe v. Emison*, 507 U.S. 25, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993) ...................... 6

*Harman v. Forssenius,* 380 U.S. 528, 537 (1965) ...................................................... 13

*Lopez Torres v. New York State Bd. of Elections*, 462 F.3d 161 (2nd Cir. 2006) ................... 11, 12

*Mastrovincenzo v. City of New York,* 435 F.3d 78, 89 (2d Cir. 2006) ............................. 9

*McMillan v. New York State Bd. of Elections*, 2010 WL 4065434 (E.D.N.Y. Oct. 15,
2010), *aff'd*, 449 F. App'x 79 (2d Cir. 2011) ..................................................... 11

*Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969) ......................... 11

*New Jersey-Philadelphia Presbytery v. New Jersey State Board of Higher Education,*
654 F.2d 868 (3d Cir. 1981) ..................................................................... 8

*People ex. rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015)* ...................... 10

*Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971
(1941) ........................................................................................... 7

*Rossito-Canty v. Cuomo,* 86 F. Supp. 3d 175, 180-1 (E.D.N.Y. 2015) ........................ 13

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 134 S.Ct. 584, 187 L.Ed.2d 505 (2013) .............. 7

*Thomas v. New York City Bd. of Elections*, 898 F. Supp. 2d 594, 597 (S.D.N.Y. 2012) ......... 9, 11

*Tiraco v. New York State Bd. of Elections,* 963 F.Supp.2d 184 (E.D.N.Y., 2013)...................... 11

*United States v. Classic,* 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)............................ 11

*Weiss v. Duberstein*, 445 F.2d 1297 (2d Cir. 1971)........................................................ 7

*Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) ............................................ 11

*Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008) ........................................ 9

*Yang v. Kellner,* 2020 WL 2129597 (S.D.N.Y., 2020)...................................................... 9

*Yang v. Kosinski*, _____F.3d _____, 2020 WL 2820179 (June 1, 2020) ............................ passim

*Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)........................................ 7

**Statutes**

New York Election Law § 8-600 ...................................................................................... 1, 3, 6, 12

## INTRODUCTION

Plaintiffs bring this action for immediate injunctive relief in order to address the violation of their First Amendment protected voting and associational rights, as candidates and voters, to rely on and utilize the Early Voting procedures added by the New York Legislature in 2019, now codified in 8-600 of the New York Election Law.

The Erie County Board of Elections, and its Commissioners, who are charged with informing the voters of the location, dates, and hours of operation of all polling places for early voting utterly failed to do so until after this lawsuit was served on their attorney.

To date, less than a week before early voting is scheduled to start, the Erie County Board of Elections, and its Commissioners, for the first time, on June 9, 2020, listed the dates , times and places of early voting on the Board's website, and have not engaged in other methods of informing the voters of how to exercise their rights, an exercise made all the more difficult this year by the Coronavirus pandemic.

This case seeks federal relief to protect the 1st Amendment Constitutional right to vote of voters to a fair election, one in which the right of voters to participate in the electoral process is carried out in accordance with state election statutes. Like in Second Circuit's June 1, 2020 decision in *Yang v. Kosinski*, ____F.3d _____, 2020 WL 2820179 (June 1, 2020) an immediate injunction is needed to compel the Defendants to inform the voters, in a meaningful way, of their opportunities to vote early throughout Erie County.

## JURISDICTION

This Court's jurisdiction is invoked pursuant to 28 USC §1331 and 42 USC §1983.

## STATEMENT OF FACTS

Plaintiffs NATE McCURRAY, and RONALD COONS , at all times mentioned, were and are now duly qualified voters of the State of New York residing in Grand Island, New York

1

and Lake View, New York, respectively, and entitled to vote in Erie County, New York, both of whom are enrolled in the Democratic Party. Plaintiffs sue individually and on behalf of all other enrolled voters similarly situated.

Plaintiff PAULINE GRABEKI, at all times mentioned, was and is now a duly qualified, voter of the State of New York residing in Hamburg, NY and is entitled to vote in Erie County, New York, and is enrolled in the Republican Party. Plaintiff sues individually and on behalf of all other enrolled voters similarly situated.

NATE McMURRAY is also the Democratic nominee for Congress in the 27th Congressional District.

Each plaintiff is an enrolled voter, entitled to vote in the Special Election for Congress in the 27th Congressional District ("27th CD"), which is scheduled to conclude on June 23, 2020, and the Democratic or Republican primary election for various offices in Erie County, also scheduled to conclude on June 23, 2020. McMurray and Coons are also eligible to vote in the New York Democratic Presidential Primary, scheduled to be held on June 23, 2020.

Defendant ERIE COUNTY BOARD OF ELECTIONS (the "Board") is constituted pursuant to the New York State Election Law and is charged with the responsibility of administering all elections within Erie County including the 2020 Special Congressional Election and the Democratic Primary. The Board is located at 134 West Eagle Street, Buffalo, New York. Defendants RALPH M. MOHR and JEREMY J. ZELLNER, are Commissioners of the Erie County Board of Elections.

As a result of the resignation for former Congressman Chris Collins in October 2019, voters in the 27th CD, which incorporates all or part of eight New York counties, shall be voting in a Special Election on June 23rd to fill the vacant Congressional seat until January 1, 2021.

Erie County includes 211,000 voters who are enrolled to vote in the 27th CD, which means that it includes 40% of the enrolled voters in the entire 27th CD.

The Special Election was originally scheduled for April 28, 2020, but was postponed, by the State Legislature, on or about April 3, 2020, until June 23, 2020 due to the COVID-19 pandemic.

In November 2018 Plaintiff McMurray ran against former Congressman Collins, and lost by a vote of 141,146 to 139,059, a margin of 1087 votes.

Effective January 24, 2019 the NY State Legislature amended the Election Law at Section 8-600 to provide, for the first time ever, for Early Voting in the State of New York. The relevant provisions of the statute provide as follows:

> 1. Beginning the tenth day prior to any general, primary, run-off primary pursuant to subdivision one of section 6-162 of this chapter or special election for any public or party position except for such an election held pursuant to title two of article six or article fifteen of this chapter, and ending on and including the second day prior to such general, primary, run-off primary or special election for such public office or party position, persons duly registered and eligible to vote at such election shall be permitted to vote as provided in this title. The board of elections shall establish procedures, subject to approval of the state board of elections, to ensure that persons who vote during the early voting period shall not be permitted to vote subsequently in the same election.

> 2. (a) The board of elections shall designate polling places for early voting, which may include the offices of the board of elections, for persons to vote early pursuant to this title. There shall be so designated at least one early voting polling place for every full increment of fifty thousand registered voters in each county; provided, however, the number of early voting polling places in a county shall not be required to be greater than seven, and a county with fewer than fifty thousand voters shall have at least one early voting polling place.

> (b) The board of elections of each county or the city of New York may establish additional polling places for early voting in excess of the minimum number required by this subdivision for the convenience of eligible voters.

> (c) Notwithstanding the minimum number of early voting poll sites otherwise required by this subdivision, for any primary or special

3

*election, upon majority vote of the board of elections, the number of early voting sites may be reduced when the board of elections determines a lesser number of sites is sufficient to meet the needs of early voters.*

*(d) Polling places for early voting shall be located so that voters in the county have adequate and equitable access, taking into consideration population density, travel time to the polling place, proximity to other early voting poll sites , public transportation routes, commuter traffic patterns and such other factors the board of elections deems appropriate. The provisions of section 4-104 of this chapter, except subdivisions four and five of such section, shall apply to the designation of polling places for early voting except to the extent such provisions are inconsistent with this section.*

*3. Any voter may vote at any polling place for early voting established pursuant to subdivision two of this section in the county where such voter is registered to vote; provided, however, if it is impractical to provide each polling place for early voting all of the election district ballots or if early voting at any such polling place makes ensuring that no voter has not previously voted early during such election, the board of elections may assign election districts to a particular early voting poll site. All voters in each county shall have one or more polling places at which they are eligible to vote throughout the early voting period on a substantially equal basis. If the board of elections does not agree by majority vote to plan to assign election districts to early voting poll sites, all voters in the county must be able to vote at any poll site for early voting in the county.*

*4. (a) Polls shall be open for early voting for at least eight hours between seven o'clock in the morning and eight o'clock in the evening each weekday during the early voting period.*

*(b) At least one polling place for early voting shall remain open until eight o'clock in the evening on at least two weekdays in each calendar week during the early voting period. If polling places for early voting are limited to voters from certain areas pursuant to subdivision three of this section, polling places that remain open until eight o'clock shall be designated such that any person entitled to vote early may vote until eight o'clock in the evening on at least two week days during the early voting period.*

*(c) Polls shall be open for early voting for at least five hours between nine o'clock in the morning and six o'clock in the evening on each Saturday, Sunday, and legal holiday during the early voting period.*

*(d) Nothing in this section shall be construed to prohibit any board of elections from establishing a greater number of hours for voting*

4

*during the early voting period beyond the number of hours required in this subdivision.*

*(e) Early voting polling places and their hours of operation for early voting at a general election shall be designated by May first of each year pursuant to subdivision one of section 4-104 of this chapter. Notwithstanding the provisions of subdivision one of section 4-104 of this chapter early voting polling places and their hours of operation for early voting for: (i) a primary or special election shall be made not later than forty-five days before such primary or special election; and (ii) a run-off primary pursuant to subdivision one of section 6-162 of this chapter shall be made as soon as practicable.*

**5. Each board of elections shall create a communication plan to inform eligible voters of the opportunity to vote early. Such plan may utilize any and all media outlets, including social media, and shall publicize: the location and dates and hours of operation of all polling places for early voting; an indication of whether each polling place is accessible to voters with physical disabilities; a clear and unambiguous notice to voters that if they cast a ballot during the early voting period they will not be allowed to vote election day; and if polling places for early voting are limited to voters from certain areas pursuant to subdivision three of this section, the location of the polling places for early voting serving the voters of each particular city, town or other political subdivision.** (Emphasis supplied.)

Prior to April 3 2020 the Erie County Board of Elections had not given eligible voters any public notice of the Early Voting locations for the April 28, 2020 Special Election, even though the Defendant Board had been deemed "essential" and had to process designating petitions for the various party primaries scheduled for June 23, 2020.

As of Monday June 8, 2020 the Defendant Commissioners had not caused the Defendant Board to engage in **any** communications with the enrolled voters about the dates of Early Voting, the polling locations open for Early Voting, the hours of Early Voting, or the accessibility of Early Voting locations. Until June 9, 2020, until it was served with this lawsuit, the Defendant Board did not even have a list of such dates, times and locations on its web site, an utter abrogation of its responsibility to conduct a fair and democratic election. This has occurred even

5

though the Board sent out notice of the procedure for applying for an absentee ballot in early

May 2020 to very voter, an action taken pursuant to an Executive Order issued by Governor

Andrew Cuomo, and could have used that notice, as many counties did, to advise voters of their

option to engage in early voting.

On June 9, 2020, after the County attorney was served with a copy of this lawsuit, the

Defendants posted the appropriate Early Voting information on the Erie County BOE website.

Under NY Election Law 8-600(4)(e) these sites should have been designated by May 1, 2020.

The Board plans no other communication to the public about early voting.

Erie County stands alone as the last County to give the voting public notice about Early

Voting locations. The websites of numerous County Boards throughout the state have featured

this information for weeks. Examples are annexed as Exhibit A.

Early Voting, by statute, is scheduled to start on Saturday June 13, 2020, and proceed

until Saturday June 20, 2020.

## ARGUMENT

## POINT I

## ABSTENTION IS NOT REQUIRED

At the argument on the TRO the Defendants, who called this a "garden variety Election

Law case," raised the issue of abstention. This issue in an election-related case was most recently

dealt with by Judge Matsumoto in *EH Fusion Party v. Suffolk County Board of Elections*, 401

F.Supp.3d 376, 386–87 (E.D.N.Y., 2019):

> "[F]ederal courts and state courts often find themselves exercising concurrent
> jurisdiction over the same subject matter, and when that happens a federal
> court generally need neither abstain (*i.e.*, dismiss the case before it) nor defer
> to the state proceedings (*i.e.*, withhold action until the state proceedings have
> concluded)." *Growe v. Emison*, 507 U.S. 25, 32, 113 S.Ct. 1075, 122 L.Ed.2d
> 388 (1993). "[D]eferral, causing a federal court to 'sta[y] its hands,' [is
> required] when a constitutional issue in the federal action will be mooted or

presented in a different posture following conclusion of the state-court case." *Id.* (citing *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941)). "Designed to avoid federal-court error in deciding state-law questions antecedent to federal constitutional issues, the *Pullman* mechanism remitted parties to the state courts for adjudication of the unsettled state-law issues. If settlement of the state-law question did not prove dispositive of the case, the parties could return to the federal court for decision of the federal issues." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997).

Under the *Younger* abstention doctrine, "federal courts must abstain where a party seeks to enjoin an ongoing, parallel state criminal proceeding, to preserve the 'longstanding public policy against federal court interference with state court proceedings' based on principles of federalism and comity." *Disability Rights New York v. New York*, 916 F.3d 129, 133 (2d Cir. 2019) (citing *Younger v. Harris*, 401 U.S. 37, 43-44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). The *Younger* abstention doctrine was extended to include particular state civil proceedings akin to criminal prosecutions and cases that implicate a state's interest in enforcing the orders and judgments of its courts. *Id.* "In *Sprint*, the Supreme Court held that *Younger*'s scope is limited to these three 'exceptional' categories – 'ongoing state criminal prosecution,' 'certain civil enforcement proceedings,' and 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.' " *Id.* (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78, 134 S.Ct. 584, 187 L.Ed.2d 505 (2013)).

*Pullman* abstention is not appropriate here because there is not an unsettled matter of state law regarding the meaning or requirements of the election law. State court resolution would only moot the federal court as a matter of claim or issue preclusion, answering the same question this court has been asked to determine…

Although the election law provides New York state courts with jurisdiction to hear expedited challenges arising under the election law, it does not purport to provide exclusive jurisdiction. Plaintiffs' decision to commence two lawsuits raising identical issues created the potential conflict between the court systems, but the plaintiffs' litigation strategy does not command that the state suit must proceed ahead of this federal court action.

Judge Keenan came to the same conclusion in the *Farrell* case back in 1988:

Normally, in state election cases, federal courts should abstain until the state proceedings are completed. *Gangemi v. Sclafani*, 506 F.2d 570, 571 (2d Cir. 1974). However, when important federal questions are raised and there exist exigencies of time, the federal court may properly address the issues. *Id.* at 572; *see, e.g., Weiss v. Duberstein*, 445 F.2d 1297 (2d Cir. 1971).

In this case, plaintiffs have raised important constitutional question, which are not before the state courts. In addition, the exigencies of time, just three weeks before the primary election, are self-evident. The state court proceeding is basically a redetermination of the facts. Although the state proceeding may ultimately provide plaintiffs with the most immediate relief sought—the placement of Mr. Farrell's name on the ballot—this is certainly not guaranteed. The Court finds it hard to believe that the abstention doctrine requires if to wait until perhaps hours before the election, after the New York State Court of Appeals has ruled, to decide important questions of constitutional law. *Cf. New Jersey-Philadelphia Presbytery v. New Jersey State Board of Higher Education,* 654 F.2d 868, 877–86 (3d Cir. 1981) (court need not abstain from granting preliminary injunction on first amendment issues).

A better course is for this Court to decide the legal questions based on the facts as they are now understood to exist. The fact that the New York courts may find the facts to be otherwise is no basis for failing to decide the issues based on the Court's reasonable understanding of the facts.

*Farrell v. Board of Elections in City of New York*, 1985 WL 2339, at *2– (SDNY 1985)

Furthermore, there is nothing "garden variety" about this case. It is a claim brough, in part, by the Democratic Party candidate for the United States Congress, about a Special Federal Election, and a US Presidential Primary which has been scheduled only because the United States District Court for the Southern District of New York, and the US Court of Appeals for the Second Circuit ordered that it be held. Erie County has over 210,000 Democratic, Republican and other party enrolled voters eligible to vote in the 27th CD Federal Special Congressional Election, and, according to the State Board of Elections website, over 300,000 Democratic Party enrollees eligible to vote in the Federal Court ordered Presidential Primary. This is not a simple case about a local candidate being displaced from the ballot due to a filing-related problem. This case is about informing over 400,000 voters about where they can exercise their franchise pursuant to the Early Voting statute created by the State of New York for all voters in the state.

## POINT II

## PLAINTIFFS MEET THIS COURT'S TRO AND
## PRELIMINARY INJUNCTION LEGAL STANDARD

A preliminary injunction requires that "the moving party . . . demonstrate (1) irreparable

harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest

weighing in favor of granting the injunction." See *Yang v Kellner, --- F.Supp.3d ----2020 WL*

*2129597* at \*6, aff'd *sub nom Yang v. Kosinski*, 2020 WL 2820179 (2nd Cir 2020),

quoting, *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 143 (2d

Cir. 2016). Moreover, the movant must show that "the balance of equities tips in his [or her]

favor." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). "A showing of irreparable

harm is the single most important prerequisite for the issuance of a preliminary injunction."

*Faiveley Transp. Malmo AB v. Wabtec Corp*., 559 F.3d 110, 118 (2d Cir. 2009) (internal

quotation marks and citation omitted); *Yang v. Kellner*, Id (S.D.N.Y., 2020); and see *Yang v.*

*Kosinski*, 2020 WL 2820179, at \*5 (C.A.2 (N.Y.), 2020)

Where a moving party seeks a mandatory preliminary injunction requiring a change to

the status quo, as opposed to a prohibitory preliminary injunction that merely maintains the

status quo, the district court "may enter a mandatory preliminary injunction against the

government only if it determines that, in addition to demonstrating irreparable harm, the moving

party has shown a 'clear' or 'substantial' likelihood of success on the merits." *Thomas v. New*

*York City Bd. of Elections*, 898 F. Supp. 2d 594, 597 (S.D.N.Y. 2012) (quoting *Mastrovincenzo*

*v. City of New York*, 435 F.3d 78, 89 (2d Cir. 2006) (internal quotation marks omitted)). This

standard also applies where the injunction "will provide the movant with substantially all the

relief sought and that relief cannot be undone even if the defendant prevails at a trial on the

merits." *People ex. rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015)* (internal quotation marks and citation omitted).

Here, each of the required elements are satisfied.

**A.    AN INJUNCTION IS REQUIRED TO PROTECT PLAINTIFFS' AND PLAINTIFFS' CLASS' FIRST AMENDMENT RIGHTS UNDER THE U.S. CONSTITUTION**

Each of the Plaintiffs is a voter who want the votes of voters in Erie County to have equal force to those in other counties, and Plaintiff McMurray wants the voters of Erie County, his home county, to have the most robust opportunity to vote under the Early Voting program. This case is unusual because the restriction on voting rights has been caused by inaction, rather than action, but it is a violation nonetheless.

At the argument of the TRO the Court asked how a state election law can create a Federal First Amendment right. As we pointed out, the manner in which citizens vote is usually set out in state election laws, but once those rights are created those rights are protected by the free speech and associational protections of the First Amendment. The Second Circuit said in *Yang*:

> The nature of the constitutional rights asserted by Plaintiffs and the Sanders delegates "is evident." As discussed above, they wish to appear on the ballot of New York's Democratic presidential primary **and they wish to vote in the primary election**. That interest "to engage in association for the advancement of beliefs and ideas" and "**to cast their votes effectively**"[46] falls squarely within the ambit of the protection afforded by the First Amendment. That interest is "an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment," which is applicable to the States.
>
> It is settled that "[t]he right to associate with the political party of one's choice is an integral part of this basic constitutional freedom [of association]… And although States have a "broad power to regulate the time, place, and manner of [such] elections," they have a " 'responsibility to observe the limits established by the First Amendment rights of the State's citizens.' "

10

> The State's power cannot be used, for example, to create barriers that
> unduly burden a person's right to participate in a state-mandated
> presidential primary. (Emphasis added)

*Yang v. Kosinski*, 2020 WL 2820179, at *7 (C.A.2 (N.Y.), 2020).

"It is well settled that the First Amendment protects "the rights of candidates and their supporters 'to organize, **access the ballot**, and vote for the candidate of their choice.' " *McMillan v. New York State Bd. of Elections*, 2010 WL 4065434, at *10 (E.D.N.Y. Oct. 15, 2010), *aff'd*, 449 F. App'x 79 (2d Cir. 2011) (citing *Rivera–Powell,* 470 F.3d at 468); *see also Anderson v. Celebrezze,* 460 U.S. 780, 787–88, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *Thomas,* 898 F.Supp.2d at 598." *Tiraco v. New York State Bd. of Elections,* 963 F.Supp.2d 184, 197 (E.D.N.Y., 2013). The 2nd Circuit made this exquisitely clear in *Lopez Torres v. New York State Bd. of Elections*, 462 F.3d 161, 185 (2nd Cir. 2006), where the court held: "[T]he State must protect First Amendment rights at each "integral part of the procedure of choice," and especially at those junctures of the electoral process that "effectively control[ ] the choice." *United States v. Classic,* 313 U.S. 299, 318, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); *see also Moore v. Ogilvie,* 394 U.S. 814, 818, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969) ( "All procedures used by a state as an integral part of the election process must pass muster against the charges of discrimination or of the abridgement of the right to vote.")." The Court, in sweeping language, discussed the need to protect voters' rights:

> "The Supreme Court has identified "two different, although overlapping,
> kinds of rights" that the First Amendment grants: " 'the right of individuals
> to associate for the advancement of political beliefs, and the right of
> qualified voters, regardless of their political persuasion, to cast their votes
> **effectively.** Both of these rights, of course, rank among our most precious
> freedoms.' " *Anderson v. Celebrezze,* 460 U.S. 780, 787, 103 S.Ct. 1564, 75
> L.Ed.2d 547 (1983) (quoting *Williams v. Rhodes,* 393 U.S. 23, 30–31, 89
> S.Ct. 5, 21 L.Ed.2d 24 (1968)). (Emphasis added.)

*Lopez Torres, supra* at 183-184.

11

The failure to give proper notice to the voters of Erie County, of the early voting locations, has undercut the power of the electorate of Erie County to participate in two Federal elections. As a result of the acts and omissions complained of herein, Plaintiffs suffered a deprivation of their Federal and State Constitutional Free Speech Right, and their Suffrage Rights Under the NY State Constitution.

**B.      PLAINTIFFS' CLAIM IS MERITORIOUS**

There is no question that the notice required by Section 8-600 was not given. The Defendants clearly did not develop a meaningful "communications plan;" for a series of sites which were supposed to be designated by May 1, 2020. Rather they hastily put the information up on their web site after being served with this lawsuit. If that was the Defendants' "plan," then it was a meaningless plan not intended to inform the voting public—over 400,000 people who are eligible to vote in one or more of the June elections, 210,000 of whom are in the 27th Congressional CD.

**C.      THE PLAINTIFFS HAVE SUFFERED IRREPARABLE INJURY**

The denial of the Constitutional right to effectively participate in an election is irreparable. *Lopez Torres*, *supra*; *Yang*, *supra*. The question is not even close

<u>**POINT III**</u>

**PLAINTIFFS' MERITORIOUS CLAIMS REQUIRE
<u>THAT AN INJUNCITON BE ISSUED</u>**

The substantive legal theories here are meritorious and the challenged inaction is both unconstitutional and an improper exercise of discretion. "'No right is more precious in a free country than that of having a voice in the election of those who make the laws … The right to vote remains, at bottom, a federally protected right … The federal protections of the right to vote also include those against interference from the states." *Rossito-Canty v. Cuomo,* 86 F. Supp. 3d

175, 180-1 (E.D.N.Y. 2015) (quotation marks and citations omitted). "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Harman v. Forssenius,* 380 U.S. 528, 537 (1965). Nor are there any factual disputes.

As to the relief sought, ordering the County Board to advertise the Early Voting information broadly throughout the county, in print, television and radio media at minimum, and to follow that up with a post card mailing to voters is the **only** way to remedy the horrific manner in which the Defendants have acted, There is no question that the balance of equities **must** tip in favor of promoting the broad voter participation that the State Legislature **mandated.** Indeed, at this juncture this is the only way that the Plaintiffs' First Amendment rights can be protected.

## <u>CONCLUSION</u>

For all of the reasons stated herein Plaintiffs urge this Court to act immediately, and order an effective advertising campaign in advance of the first early voting date, and then require the Board to send a postcard notice to each voter giving them the information needed to participate in the early voting process.

Dated: June 9, 2020

Respectfully submitted,

ADVOCATES FOR JUSTICE
Attorneys for Plaintiffs

By:  /s/ Arthur Z. Schwartz
    Arthur Z. Schwartz
225 Broadway, Suite 1902
New York, New York 10007
T: (917)-923-8136
F: (212)-285-1410
aschwartz@afjlaw.com

WEBSTER & DUBS, PC
Local Counsel

By:  /s/ Joshua E. Dubs
    Joshua E. Dubs
37 Franklin Street Suite 500
Buffalo, NY 14202
T: 716-854-2050
F: 716-768-2258
josh@websterdubs.com