UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NATE MCMURRAY, a Candidate for
Congress and as an Enrolled Democratic
Party Voter in Erie County; PAULINE
GRABEKI, as an Enrolled Republican
Party Voter in Erie County; and RONALD
COONS, as an Enrolled Democratic Party
Voter in Erie County, individually and on
behalf of a Class of Erie County Voters
Similarly Situated,                                            20-CV-689
                                                               DECISION & ORDER
                    Plaintiffs,

          v.

RALPH M MOHR, RONALD COONS,
and JEREMY ZELLNER, individually and
as Commissioners of the Erie County
Board of Elections; and THE ERIE
COUNTY BOARD OF ELECTIONS,

                    Defendants.

_____

          On June 9, 2020, the plaintiffs filed a complaint alleging violations of "the First

Amendment to the [United States] Constitution, and the Free Speech and Free Suffrage

provisions of the New York State Constitution."  Docket Item 1.  They also filed a motion

for a temporary restraining order ("TRO") and preliminary injunction.  Docket Item 3.

Later that day, this Court held oral argument.  Docket Item 9.

          Early the next morning—more than four hours after the court-ordered deadline—

the plaintiffs submitted a memorandum of law in support of their motion for a TRO and

preliminary injunction.  Docket Item 8.  The defendants responded later that day.

Docket Item 10.

The plaintiffs' reply was due at noon on June 11, 2020.  *See* Docket Item 7.  At noon, the plaintiffs emailed the Court and requested an extension to 2:30 p.m., which the Court granted.  At 3:30 p.m., the plaintiffs filed a reply raising an entirely new legal argument based on the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  Docket Item 14.[1]

This Court will not consider the new arguments raised in the plaintiffs' reply.  "Arguments may not be made for the first time in a reply brief."  *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993).  Along the same lines, a district court typically will not consider "[n]ew arguments first raised in reply papers in support of a motion." *Zirogiannis v. Seterus, Inc.,* 221 F. Supp. 3d 292, 298 (E.D.N.Y. 2016), *aff'd*, 707 F. App'x 724 (2d Cir. 2017) (quoting *Domino Media, Inc. v. Kranis*, 9 F.Supp.2d 374, 387 (S.D.N.Y. 1998)).  And given the plaintiffs' request for expedited—indeed, almost immediate—relief, that rule applies with even more force here.

For the reasons that follow, this Court denies the plaintiffs' motion for a TRO and preliminary injunction on their original First Amendment claim.

## BACKGROUND

The plaintiffs—Nate McMurray, Pauline Grabeki, and Ronald Coons—are registered voters in Erie County, New York.  Docket Item 1 ¶¶ 6-9.  Plaintiff McMurray is also a congressional candidate for the New York 27th Congressional District seat.  *Id.* ¶ 6.  Defendants Ralph M. Mohr and Jeremy J. Zellner are the Commissioners of the

---

[1] The plaintiffs alleged an Equal Protection claim for the first time in an amended complaint filed a little over an hour before their late-filed reply.  *See* Docket Item 12.

Erie County Board of Elections ("the Board").  *Id.* ¶ 11.  The Board is also a defendant.

*Id.* ¶ 10.

Effective January 24, 2019, the New York State Legislature amended section 8-

600 of the New York State Election Law to provide the opportunity for early voting.  *See*

Docket Item 8 at 7.  Section 8-600 also provides that:

> Each board of elections shall create a communication plan to
> inform eligible voters of the opportunity to vote early.  Such
> plan may utilize any and all media outlets, including social
> media, and shall publicize:  the location and dates and hours
> of operation of all polling places for early voting; an indication
> of whether each polling place is accessible to voters with
> physical disabilities; a clear and unambiguous notice to voters
> that if they cast a ballot during the early voting period they will
> not be allowed to vote election day; and if polling places for
> early voting are limited to voters from certain areas pursuant
> to subdivision three of this section, the location of the polling
> places for early voting serving the voters of each particular
> city, town or other political subdivision.

N.Y. Elec. Law § 8-600(5).

The following elections are scheduled to occur on June 23, 2020:  the New York

Democratic Presidential primary, the Democratic and Republican primaries for various

offices in Erie County, and a special election for the 27th Congressional District.  Docket

Item 1 ¶ 9.  Early voting is scheduled to begin on Saturday, June 13, 2020.  *Id.* ¶ 19.

In their complaint, the plaintiffs alleged that the defendants had "not even listed

the dates, times[,] and places of early voting on the Board's website, much less

engaged in other methods of informing the voters of how to exercise their rights, an

exercise made all the more difficult this year by the Coronavirus pandemic."  *Id.* ¶ 3.  At

oral argument, however, the parties informed the Court that the defendants had since

posted the dates, times, and places of early voting on the Board's website.  But

according to the plaintiffs, the defendants still have not gone far enough.  For example, the plaintiffs said, the defendants should place advertisements regarding early voting in all general circulation newspapers in the county.

## DISCUSSION

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Monserrate v. N.Y. St. Senate*, 599 F.3d 148, 154 (2d Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).  It "is an equitable remedy and an act of discretion by the court." *Am. Civ. Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015).  The same standard governs consideration of an application for a TRO.  *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Trump v. Deutsche Bank AG*, 943 F.3d 627, 640 (2d Cir.), *cert. granted*, 140 S. Ct. 660 (2019) (quoting *Winter*, 555 U.S. at 20).[2]  Moreover, the Second Circuit has instructed that a mandatory injunction—that is, an injunction commanding a positive act, as opposed to one that merely maintains the status quo—"should issue

---

[2]  Although the Second Circuit also recognizes a "less rigorous standard" of "sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly in their favor," that standard "cannot be used"—as the plaintiffs seek to do here —"to preliminarily enjoin governmental action." *Deutsche Bank*, 943 F.3d at 637 (citations omitted); *see also Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995) ("As long as the action to be enjoined is taken pursuant to a statutory or regulatory scheme, even government action with respect to one litigant requires application of the 'likelihood of success' standard.").

'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)).

Here, the plaintiffs argue that the defendants' failure to sufficiently publicize the details of early voting violates their rights under the First Amendment. As explained in more detail below, the Court finds that the plaintiffs have not shown that they are likely to succeed on the merits of their claim.[3]

## I.    SUBJECT MATTER JURISDICTION AND STANDING

Before wading into the merits of the plaintiffs' claim, the Court must decide two threshold issues. First, the defendants argue that this Court "lacks subject matter jurisdiction over this 'garden variety' state election dispute masquerading as a federal 'constitutional violation' because both the claim and remedy sought arise solely under state law." Docket Item 10 at 15. Second, they claim that the plaintiffs do not have standing to bring this suit because they have not alleged a cognizable injury. *Id.* at 29-30.

Regarding jurisdiction, the plaintiffs' *claim* is that the defendants have violated their associational rights under the First Amendment of the United States Constitution. That is a federal question over which this Court has jurisdiction. Indeed, the cases that the defendants cite in support of their jurisdictional arguments rejected challenges to

---

[3] Although the plaintiffs also raise claims under the New York State Constitution, they do not argue that those claims should be analyzed any differently than their claims under the First Amendment. Thus, this Court need not analyze separately the merits of the plaintiffs' state-law claims.

state election laws on the merits, not on jurisdictional grounds.  *See, e.g.*, *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 470 (2d Cir. 2006) (finding that the plaintiffs had "stated no valid due process or First Amendment claims"); *Shannon v. Jacobowitz*, 394 F.3d 90, 97 (2d Cir. 2005) (reversing district court's grant of summary judgment on Due Process claim).  It may well be the case that this is a "state election dispute masquerading as a federal 'constitutional violation,'" but that is an argument that goes to the merits of the plaintiffs' First Amendment claim, not jurisdiction.[4]

Similarly, with regard to standing, the plaintiffs have alleged that "[u]nless the Board is . . . directed to give immediate notice to voters about the availability and location of early voting, voters will be deprived of their full right to vote, and Candidate McMurray will be deprived of the votes of people who will only vote if they can do so at less crowded, early voting sites."  Docket Item 1 ¶ 22.  Whether the plaintiffs will be able to prove that these alleged injuries are "actual or imminent, not conjectural or hypothetical," *Price v. Saugerties Cent. Sch. Dist.*, 305 F. App'x 715, 716 (2d Cir. 2009), remains to be seen.  But at this stage of the litigation, the Court does not have enough information to find that the plaintiffs lack standing.

## II.    THE PLAINTIFFS' MOTION FOR A TRO AND PRELIMINARY INJUNCTION

"[V]oting directly implicates the First Amendment (as applied to the states through the Fourteenth Amendment), which protects the right to form political parties for

---

[4]  The plaintiffs argue that "abstention is not required," Docket Item 8 at 10, but that is a straw-man argument.  As the defendants observe, "this is not an issue of abstention, in which the federal and state courts have *concurrent* jurisdiction."  Docket Item 10 at 20 (emphasis in original).  The plaintiffs chose to file in federal court, and the Court is not aware of any concurrent lawsuits raising the same issues in state court.

the advancement of common political goals and ideas and the corresponding right to associate with candidates of those parties through the ballot." *Green Party of State of New York v. Weiner*, 216 F. Supp. 2d 176, 186 (S.D.N.Y. 2002) (citing *Anderson v. Celebrezze,* 460 U.S. 780, 786-88 (1983)).  "It does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Burdick v. Takushi,* 504 U.S. 428, 433 (1992) (citing *Munro v. Socialist Workers Party,* 479 U.S. 189, 193 (1986)).  Rather, "[s]tates have a 'broad power to regulate the time, place, and manner of . . . elections.'" *Yang v. Kosinski*, --- F.3d ---, 2020 WL 2820179, at *7 (2d Cir. June 1, 2020) (quoting *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 222 (1989)).

In exercising that power, however, states must "observe the limits established by the First Amendment rights of the [s]tate's citizens."  *Id.* (quoting *Eu*, 489 U.S. at 222).  "The [s]tate's power cannot be used, for example, to create barriers that unduly burden a person's right to participate in a state-mandated presidential primary."  *Id.* (citing *N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 204 (2008)).  To that end, the Supreme Court has found unconstitutional a state statute that prohibited a person from voting in a party's primary if within the preceding twenty-three calendar months he had voted in another party's primary.  *Kusper v. Pontikes*, 414 U.S. 51, 60-61 (1973).  But in another case, the Court upheld a state law requiring a voter to enroll in the party of his choice at least 30 days before a general election in order to be eligible to vote in the next party primary.  *Rosario v. Rockefeller*, 410 U.S. 752, 758 (1973).  The Court explained that former unduly burdened voters because it "'lock[ed]' voters into a pre-existing party affiliation from one primary to the next, and the only way to break the

'lock' [wa]s to forgo voting in any primary for a period of almost two years." *Kusper*, 414 U.S. at 60-61.  By contrast, the latter "did not prevent voters from participating in the party primary of their choice; it merely imposed a time limit on enrollment." *Id.* at 60.

Here, the plaintiffs allege that the defendants have violated section 8-600 of the New York State Election Law by failing to do enough to publicize the availability of early voting in the June 23rd elections.  To succeed on their First Amendment claim, they must demonstrate that their right to vote, or to have votes cast for them, in these elections has been "unduly burdened" by the Board's failure to adequately disseminate information about early voting.  They are unlikely to do so.

As an initial matter, even assuming for the sake of argument that the defendants have violated New York law, a "failure to conform to state law does not in itself violate the Constitution and is not alone actionable under [42 U.S.C.] § 1983." *Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir. 1985).  In other words, a state law does not, as a matter of course, create a constitutional right.

The plaintiffs disagree.  Relying on *Yang*, they argue that "once [voting] rights are created [by state law] those rights are protected by the free speech and associational protections of the First Amendment."  Docket Item 8 at 10.

But *Yang* does not stand for that proposition—at least under the circumstances here.  There, the Second Circuit found that New York State's *cancellation* of the Democratic primary violated the plaintiffs' First Amendment rights.  2020 WL 2820179, at *7-8.  As the Court explained, the "cancellation of the presidential primary has deprived [the p]laintiffs . . . not only of their right to cast a ballot in the presidential primary, but also of their right to seek an entitlement to attend the Democratic National

Convention as delegates." *Id.* at *8.  And "delegates have many important responsibilities, some with long-term consequences.  In addition to participating in the selection of the presidential nominee, they vote on the procedural rules of the Convention; the National Democratic Party electoral platform; issues of party governance; and not insignificantly, the selection of the vice-presidential nominee." *Id.* at *7.  In other words, the defendants' decision to cancel the Democratic primary deprived the plaintiffs entirely of the ability to participate in the decision-making of their chosen political party.  So the state's actions would have violated the Constitution irrespective of any rights under state law.

Here, by contrast, the plaintiffs do not claim that they will not be able to vote or have votes cast for them in the June 23rd elections; instead, they contend that the defendants have not *done enough* to publicize information regarding *early voting*.  But early voting is an *expansion* of the right to vote; there is no constitutional right to vote prior to the election.  *See Gustafson v. Illinois State Bd. Elections*, 2007 WL 2892667, at *5 (N.D. Ill. Sept. 30, 2007) (rejecting First Amendment claim based on state's early voting law because the law "represent[ed] an expansion of voters' ability to express their political viewpoint by expanding their right to vote or, in the worst of scenarios, leaving it as it was").  Therefore, the plaintiffs are unlikely to prove that in failing to further publicize early voting, the defendants have burdened—let alone "unduly burdened"— their right to participate in the June 23rd elections.

What is more, the defendants now have complied with the plain text of section 8-600:  they have "create[d] a communication plan to inform eligible voters of the opportunity to vote early" and posted the necessary information on their website.  The

9

plaintiffs argue that the defendants did not do that soon enough and otherwise have not done enough to satisfy section 8-600.  But that is not an issue this Court should—or even can—get involved in; it is purely a state law issue.  *See Rivera-Powell*, 470 F.3d at 469 ("When, as here, a plaintiff challenges a Board of Election decision not as stemming from a constitutionally or statutorily invalid law or regulation, but rather as contravening a law or regulation whose validity the plaintiff does not contest, there is no independent burden on First Amendment rights when the state provides adequate procedures by which to remedy the alleged illegality.").[5]  To be sure, the Court could involve itself if the state or a state law abridged the plaintiffs' First Amendment rights in some way.  But that is not that case here.

## CONCLUSION

For all those reasons, the plaintiffs' motion for a TRO and preliminary injunction, Docket Item 3, is DENIED.

SO ORDERED.

Dated:   June 11, 2020
         Buffalo, New York

_/s/ Lawrence J. Vilardo_
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

[5]  Additionally, the plaintiffs have made no showing that the defendants' failure to take action beyond posting early voting information on their website has caused the plaintiffs irreparable harm.  They have not, for example, offered any evidence that absent the defendants' publishing ads in newspapers, voters would be both unaware of their opportunity to vote early and unable to vote on election day.