UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NATE MCMURRAY, a Candidate for Congress and as an Enrolled Democratic Party Voter In Erie County, PAULINE GRABEKI, as an Enrolled Republican Party Voter in Erie County, and RONALD COONS, as an Enrolled Democratic Party Voter in Erie County, individually and on behalf of a Class of Erie County Voters Similarly Situated,

         Plaintiffs,

– against –

RALPH M. MOHR and JEREMY J. ZELLNER, individually and as COMMISSIONERS of the ERIE COUNTY BOARD OF ELECTIONS, and the ERIE COUNTY BOARD OF ELECTIONS,

         Defendants.

Case No.: 1:20-cv-00689-LJV

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

**HODGSON RUSS LLP**
*Attorneys for Defendants Ralph M. Mohr, Jeremy J. Zellner, and the Erie County Board of Elections*
Daniel A. Spitzer, Esq.
Charles W. Malcomb, Esq.
Aaron M. Saykin, Esq.
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000

**MICHAEL A. SIRAGUSA**
*Erie County Attorney and Attorney for Defendants Ralph M. Mohr, Jeremy J. Zellner, and the Erie County Board of Elections*
Jeremy Toth, Esq.
95 Franklin Street, Suite 1635
Buffalo, NY  14202
716.858.2204

# **TABLE OF CONTENTS**

PAGE

Preliminary Statement ........................................................................................................1

Factual Background ...........................................................................................................2

Argument ...........................................................................................................................2

POINT I.     DEFENDANTS MEET THE STANDARD FOR DISMISSAL
             PURSUANT TO FRCP 12(b)(6) ...................................................................3

POINT II.    THE ALLEGED VIOLATION OF STATE LAW IS NOT A
             CONSTITUTIONAL VIOLATION ..............................................................4

POINT III.   THE BOE'S PUBLICITY EFFORTS IN COMPARISON WITH
             OTHER COUNTIES DOES NOT PRESENT A COGNIZABLE
             EQUAL PROTECTION CLAIM ...................................................................7

POINT IV.    THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL
             JURISDICTION OVER ANY REMAINING STATE LAW CLAIMS. ....8

Conclusion .......................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................... 3

*Burton v. Georgia*,
    953 F.2d 1266 (11th Cir. 1992) ............................................................................................. 5

*Carnegie-Mellon University v. Cahill*,
    484 U.S. 343 (1988) ............................................................................................................... 9

*City of Cleburne v. Cleburne Living Ctr., Inc.*,
    473 U.S. 432 (1985) ............................................................................................................... 7

*Curry v. Baker*,
    802 F.2d 1302 (11th Cir. 1986) ......................................................................................... 5, 6

*Evans v. Cornman*,
    398 U.S. 419 (1970) ............................................................................................................... 5

*Gamza v. Aguirre*,
    619 F.2d 449 (5th Cir. 1980) ................................................................................................. 5

*Griffin v. Burns*,
    570 F.2d 1065 (1st Cir. 1978) ............................................................................................... 6

*Gustafson v. Illinois State Bd. Elections*,
    2007 WL 2892667 (N.D. Ill. Sept. 30, 2007) ..................................................................... 4, 5

*Interworks Sys. Inc. v. Merch. Fin. Corp.*,
    604 F.3d 692 (2d Cir. 2010) ................................................................................................... 3

*Kolari v. New York-Presbyterian Hosp.*,
    455 F.3d 118 (2d Cir. 2006) ............................................................................................. 9, 10

*McMurray et al. v. Mohr et al.*,
    20-CV-689, Dkt. 15 (W.D.N.Y. June 11, 2020) ..................................................................... 4

*Patterson v. Coughlin*,
    761 F.2d 886 (2d Cir. 1985) ................................................................................................... 4

# TABLE OF AUTHORITIES - cont'd

PAGE

*Powell v. Power*,
　436 F.2d 84 (2d Cir. 1970)..................................................................................4, 7

*Rivera-Powell v. New York City Bd. of Elections*,
　470 F.3d 458 (2d Cir. 2006)................................................................................5, 6

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
　411 U.S. 1 (1973)......................................................................................................8

*Shannon v. Jacobowitz*,
　394 F.3d 90 (2d Cir. 2005)..................................................................................5, 6

*Snowden v. Hughes*,
　321 U.S. 1, 64 S. Ct. 397 (1944)............................................................................4

**Federal Statutes**

28 U.S.C. §1367(a) .......................................................................................................9

28 U.S.C. § 1367(c) ..................................................................................................9, 10

42 U.S.C. § 1983.......................................................................................................1, 4

**State Statutes**

N.Y. Elec. Law § 8-600 ..........................................................................................7, 9

**Rules**

FRCP 12(b)(6) ..............................................................................................................3

FRCP 23.........................................................................................................................2

**Preliminary Statement**

Plaintiffs assert the Erie County Board of Elections (the "BOE") alleged failure to provide and advertise early voting opportunities as required by state law violated their rights under the First and Fourteenth Amendments.  Their First Amended Complaint adds an Equal Protection Clause cause of action premised on the disparity between what the BOE did under that state law compared to the level of notice other county BOEs provided.  This Court denied Plaintiffs' motion for a temporary restraining order and preliminary injunction for failure to raise a claim constituting a constitutional violation.  Because of the late filing of the First Amended Complaint, the Court did not review the Equal Protection Claim, or any additional facts provided in that document.

Defendants now move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6).  As the Court explained in its rejection of the preliminary junction request, not every violation of state election law (if such violation occurred, as this Court presumes it has on a motion to dismiss) rises to the level of a constitutional violation, and Plaintiffs' claim does not constitute a violation of civil rights.  The First Amended Complaint has not burdened the record with additional facts showing otherwise.  The Equal Protection claim also fails because it charges the BOE not with discrimination among different classes of voters, but of doing less advertising than other BOEs.  But the Equal Protection Clause in voting cases governs how a state actor treats voters, not how it acts in relation to other state actors.  The Second Cause of Action fails to state upon which relief can be granted.

Any issue of compliance with state procedures alleged here simply does not implicate civil rights within the meaning of 42 U.S.C. § 1983, and additionally the Equal

Protection Clause cause of action does not state a claim cognizable under that Clause. Nor should the Court exercise jurisdiction over the undefined New York State Constitution claim. This proceeding should be dismissed.

## Factual Background

The Court is familiar with the facts from the pleadings and declarations submitted as part of Plaintiffs' injunction request, and Defendants refer to them for the same. *See* Dkts. 10, 10-1. They also are summarized in the accompanying Declaration of Daniel A. Spitzer, dated July 13, 2020 ("Spitzer Decl.")

The First Amended Complaint adds assertions on why the Plaintiffs purportedly meet the FRCP 23 rules for a class action, as well as a Second Cause of Action for an Equal Protection Clause violation arising from the same violation of state law, but based on comparisons with how other BOEs in counties within the 27th Congressional District handled early voting publicity. It does not allege that the Erie County BOE treated any classes of voters within the County differently. *See generally*, Spitzer Decl., Ex. C.

This Court may take judicial notice that early voting that was the subject of the this proceeding ended on Sunday, June 21, 2020. Plaintiffs sought injunctive relief as to the early voting period in its Complaint, expanding that request to the November general election in the First Amended Complaint.

## Argument

Although posed as two separate federal constitutional claims, Plaintiffs' sole argument is that Defendants did not do enough to advertise one aspect of an additional voting

2

avenue, early in-person voting, as thoroughly as they believe was required by state law. Plaintiffs have not met their burden to demonstrate that the alleged violation of a state law provision is a constitutional violation, nor does the comparison with other BOEs show an equal protection violation.

To the extent Plaintiffs assert vague state constitutional violations (Spitzer Decl., Ex. C (First Amended Complaint) ¶¶ 37-41), the Court should not exercise its discretion to hear claims arising under pendent jurisdiction if the federal claims are dismissed, and should dismiss those claims as well.

### POINT I.   DEFENDANTS MEET THE STANDARD FOR DISMISSAL PURSUANT TO FRCP 12(b)(6).

Defendants make this motion to dismiss pursuant to FRCP 12(b)(6). In order to survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When, as here, a court is reviewing a motion to dismiss, it must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010). And while it remains Defendants' position that the allegations are false, even if all the allegations were true, the Court is presented with no more than a violation of state election law, and the Court is fully able to determine whether under any set of reasonable circumstances such a violation rises to the level of a constitutional violation. It does not and dismissal is appropriate.

**POINT II.     THE ALLEGED VIOLATION OF STATE LAW IS NOT A CONSTITUTIONAL VIOLATION.**

At issue here is an alleged violation of state law, no more. "Mere violation of a state statute does not infringe the federal Constitution." *Snowden v. Hughes*, 321 U.S. 1, 11, 64 S. Ct. 397, 402 (1944); *see also Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir. 1985) ("failure to conform to state law does not in itself violate the Constitution and is not alone actionable under [42 U.S.C.] § 1983."). Nor does this case involve the type of alleged violation where access to the polls or the ballot is denied. Indeed, it is not even about how the election was carried out. The issue is whether Defendants sufficiently communicated to the public an expansion of voting access.

Plaintiffs present no evidence or scenario in which the level of publicity about an extra avenue of voting can achieve the status of a constitutional violation. As the Second Circuit stated, in a far more serious situation of alleged illegal voting, "we cannot believe that the framers of our Constitution were so hypersensitive to ordinary human frailties as to lay down an unrealistic requirement that elections be free of any error." *Powell v. Power*, 436 F.2d 84, 88 (2d Cir. 1970) (no federal remedy for errors by state election officials permitting individuals to cast ballots who under state law were not qualified to vote).

The Court's Decision and Order denying Plaintiffs' motion for a preliminary injunction cites *Gustafson v. Illinois State Bd. Elections*, 2007 WL 2892667, at *5 (N.D. Ill. Sept. 30, 2007), for the proposition that "early voting is an expansion of the right to vote; there is no constitutional right to vote prior to the election." *McMurray et al. v. Mohr et al.*, 20-CV-689, Dkt. 15, at *9 (W.D.N.Y. June 11, 2020). In *Gustafson*, the court dismissed the plaintiff's First

4

Amendment claim alleging a violation of an Illinois early voting law because the law "represent[ed] an expansion of voters' ability to express their political viewpoint by expanding their right to vote or, in the worst of scenarios, leaving it as it was." *Id.* (quoting 2007 WL 2892667, at *5). The same result is required here.

*Gustafson* is entirely consistent with the Second Circuit's jurisprudence regarding alleged state election law violations, and its reluctance to allow such claims to bootstrap their way into federal court as purported constitutional violations. "Principles of federalism limit the power of federal courts to intervene in state elections. . . ." *Shannon v. Jacobowitz*, 394 F.3d 90, 94 (2d Cir. 2005) (quoting *Burton v. Georgia*, 953 F.2d 1266, 1268 (11th Cir. 1992)). "The Constitution 'leaves the conduct of state elections to the states, and the Supreme Court has "recognized that the States 'have long been held to have broad powers to determine the conditions under which the right of suffrage may be exercised.'" *Id.* (quoting *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980); *Evans v. Cornman*, 398 U.S. 419, 422 (1970)). "Because the states traditionally have authority over their own elections and because the Constitution contemplates that authority, courts 'have long recognized that not every state election dispute implicates federal constitutional rights.'" *Id.* (quoting *Burton*, 953 F.2d at 1268). "Only in extraordinary circumstances will a challenge to a state [or local] election rise to the level of a constitutional deprivation." *Id.* (quoting *Curry v. Baker*, 802 F.2d 1302, 1314 (11th Cir. 1986)). And a party cannot "obtain federal court review of even the most mundane election dispute" simply by adding a First Amendment claim to other alleged violations. *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458 (2d Cir. 2006).

An example of a "mundane" dispute is one that asks a federal court to "intervene to . . . supervise the administrative details of a local election." *Curry*, 802 F.2d at 1314 (citing *Griffin v. Burns*, 570 F.2d 1065, 1078 (1st Cir. 1978)). The Second Circuit provides several others: "malfunctioning of voting machines, human error resulting in miscounting of votes and *delay* in arrival of voting machines; allegedly *inadequate state response* to illegal cross-over voting; mechanical and human error in counting votes; *technical deficiencies* in printing ballots; mistakenly allowing non-party members to vote in a congressional primary; and arbitrary rejection of ten ballots." *Jacobowitz*, 394 F.3d at 96 (citing multiple decisions) (emphasis added).

In contrast, the type of "extraordinary circumstances" permitting federal court intervention involve actual "infringements of voting rights," including, for example: "dilution of votes by reason of malapportioned voting districts or weighted voting systems; purposeful or systematic discrimination against voters of a certain class, geographic area, or political affiliation; and other willful conduct that undermines the organic processes by which candidates are elected." *Id.* (citing multiple decisions). As the Second Circuit explains, "[e]ach required intentional state conduct directed at impairing a citizen's right to vote." *Id.*

The Second Circuit has addressed this precise situation, when a plaintiff challenges the determination of conduct of a board of elections, as opposed to challenging the constitutionality or validity of the underlying state statute or regulation itself, there can be no colorable First Amendment claim. In *Rivera-Powell*, 470 F.3d at 469-70, the court held:

> When, as here, a plaintiff challenges a Board of Election decision
> not as stemming from a constitutionally or statutorily invalid law
> or regulation, but rather as contravening a law or regulation whose

6

> validity the plaintiff does not contest, *there is no independent burden on First Amendment rights when the state provides adequate procedures by which to remedy the alleged illegality*.
>
> \*   \*   \*
>
> We therefore hold that when a candidate raises a First Amendment challenge to his or her removal from the ballot based on the allegedly unauthorized application of an admittedly valid restriction, the state has satisfied the First Amendment if it has provided due process.

(Emphasis added).

This is precisely what Plaintiffs are attempting here. They are not challenging the validity or constitutionality of N.Y. Elec. Law § 8-600; rather, they are accusing the BOE of an "unauthorized application of an admittedly valid" statute. Therefore, Plaintiffs have not alleged a cognizable First Amendment constitutional claim, and under Second Circuit precedent, Plaintiffs have not stated a claim for which relief is available.

### POINT III.  THE BOE'S PUBLICITY EFFORTS IN COMPARISON WITH OTHER COUNTIES DOES NOT PRESENT A COGNIZABLE EQUAL PROTECTION CLAIM.

The Equal Protection Clause requires that government entities like the BOE treat similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). As stated by the Second Circuit, "[u]neven or erroneous application of an otherwise valid statute constitutes a denial of equal protection only if it represents 'intentional or purposeful discrimination.'" *Powell v. Power*, 436 F.2d 84, 88 (2d Cir. 1970). But the Plaintiffs do not charge that the BOE treated any Erie County voters in a dissimilar or discriminatory fashion; their complaint is about the publicity provided (or rather, allegedly not provided) to all Erie County voters. Instead, they claim that other county governments did a better job of

promoting early voting in comparison to the Erie County BOW. Plaintiffs' assertions simply do not meet the elements of an Equal Protection violation.

"The function of the Equal Protection Clause, rather, is simply to measure the validity of classifications created by state laws." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 59 (1973) (Stewart, J., concurring). Here, the BOE did not undertake any action creating different classes of voters. Plaintiffs assert since other County's BOEs provided more publicity, the Erie County BOE violated the Equal Protection Clause. But the Equal Protection Clause judges how a state actor treats voters, not how it acts in comparison to other state actors. Under the Plaintiffs' world view, if State A had early voting, and State B did not, State B would violate the Equal Protection Clause. But State B—just like the BOE—treated all its voters equally, thus satisfying its Equal Protection obligations.

Plaintiffs' allegations do not meet the required elements of an Equal Protection claim, accordingly the Second Cause of action fails to state a claim upon which relief can be granted.

**POINT IV.   THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER ANY REMAINING STATE LAW CLAIMS.**

The state election law claim is Plaintiffs' sole basis of federal jurisdiction. Plaintiffs also assert a violation of their New York State Constitution suffrage rights as well, without encumbering the First Amended Complaint with any explanation of this claim. *See* Spitzer Decl., Ex. C, First Cause of Action, ¶¶ 37-41. If Plaintiffs' federal claims are dismissed, then the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims because they ask the Court to engage in the interpretation of a novel and complex issue of

8

first impression under New York state law—namely, the scope of the required publicity under N.Y. Elec. Law § 8-600 and whether such a claim rises to the level of a state constitutional violation.  As the Supreme Court has stated, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon University v. Cahill,* 484 U.S. 343, 350 n. 7 (1988).  Here, especially given the absence of specificity as to the State Constitutional claim and the novel question of whether the required quantum of publicity under state election law issue rises to a violation of the state constitution, dismissal is the prudent course.

Under 28 U.S.C. §1367(a), the Court has supplemental jurisdiction over related state law claims in any action where the Court also has original jurisdiction, such as Plaintiffs' federal claims here.  But where the district court has dismissed all claims over which it has original jurisdiction, and/or the remaining claims raise a novel or complex issue of state law, under 28 U.S.C. § 1367(c), the Court may decline to continue its exercise of supplemental jurisdiction over those related state law claims.

Where a district court's discretion is triggered under § 1367(c), it balances the traditional values of judicial economy, convenience, fairness and comity in deciding whether to exercise jurisdiction.  In the usual case, "the balance of facts [ ] will point toward declining to exercise jurisdiction over the remaining state law claims." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).  As explained by the Second Circuit, where there remains no independent basis for federal jurisdiction, "if the federal claims are dismissed before

9

trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.*

If Plaintiffs' federal claims are dismissed there would be no original jurisdiction over this action. This matter has not yet proceeded past the opening pleading stage, and discovery has not yet begun. Thus, the case has not proceeded to the point where it would be unfair to require Plaintiffs to pursue state law claims in state court. Further, principles of comity would dictate that Plaintiffs' claim, which requires an interpretation of the state constitution and a novel issue of state election law, be passed on in the first instance by New York state courts. Therefore, if Plaintiffs' federal claims are dismissed, then the Court should decline to exercise supplemental jurisdiction over the New York State constitutional claim, meaning that claim should be dismissed as well pursuant to 28 U.S.C. § 1367(c).

## Conclusion

For the foregoing reasons, the Court should dismiss the First Amended Complaint.

Dated:   July 13, 2020

**HODGSON RUSS LLP**
*Attorneys for Defendants Ralph M. Mohr, Jeremy J. Zellner, and the Erie County Board of Elections*

By:   s/ Daniel A. Spitzer
        Daniel A. Spitzer, Esq.
        Charles W. Malcomb, Esq.
        Aaron M. Saykin, Esq.
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040

10

716.856.4000
Dspitzer@hodgsonruss.com
CMalcomb@hodgsonruss.com
ASaykin@hodgsonruss.com


- and -


MICHAEL A. SIRAGUSA
*Erie County Attorney and Attorney for Defendants Ralph M. Mohr, Jeremy J. Zellner, and the Erie County Board of Elections*
By:   s/ Jeremy Toth
       Jeremy Toth, Esq.
Second Assistant County Attorney
95 Franklin Street, Suite 1635
Buffalo, NY  14202
Tel:  (716) 858-2204
Email: Jeremy.Toth@erie.gov

11