UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
----------------------------------------------------------------X

NATE MCMURRAY, PAULINA GRABEKI, *et al.*,       20 Civ 0689 -LJV

Appellants,

v.

RALPH MOHR, *et al.*,

Appellees.

----------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO THE MOTION TO DISMISS

## INTRODUCTION

In conjunction with opposing the Motion to Dismiss, Plaintiffs have also filed a Motion for Leave to File A Second Amended Complaint. The issues raised in the Second Amended Complaint are the same; the facts have been updated, and the Second Amended Complaint makes it clear that relief is being sought in connection with the November 3, 2020 election. Since the issues are the same, we address the Motion to Dismiss, even though it was addressed to the First Amended Complaint – a complaint that the District Court DID NOT consider when it denied the Preliminary Injunction (the First Amended Complaint raised an Equal Protection Issue which the District Court did not address in its opinion.)

Plaintiffs bring their amended action for injunctive relief in order to address the anticipated violation of their First Amendment and Fourteenth Amendment protected voting and associational rights, as candidates and voters, to rely on and utilize the Early Voting procedures added by the New York Legislature in 2019, now codified in 8-600 of the New York Election

Law, and to have Early Voting administered in a way in the November 2020 General Election being held in the 27th Congressional District (27th CD) in a manner which does not disadvantage voters in Erie County.

The Erie County Board of Elections, and its Commissioners, who are charged with informing the voters of the location, dates, and hours of operation of all polling places for early voting, failed to do so in June 2023, in advance of the Special Election, in a manner required by law, and in a manner which all other Boards of Election in the 27th CD engaged in. Not until June 9, 2020, after the Defendants had been served with the papers in this case, less than a week before early voting was scheduled to start, did the Erie County Board of Elections, and its Commissioners list the dates, times and places of early voting on the Board's website, much less engage in other methods of informing the voters of how to exercise their rights, an exercise made all the more difficult this year by the Coronavirus pandemic. Every other Board of Elections in the eight-county 27th Congressional District had done this.

Given past practice, and the critical importance of early voting in circumstances where mail balloting could be delayed, injunctive relief is needed to compel the Defendants to inform the voters, in a meaningful way, of their opportunities to vote early throughout Erie County prior to the November 2, 2020 General Election, information which voters in other counties in the 27th Congressional District had prior to June 23, 2020, and are lively to have in advance of November 3, 2020.

## **STATEMENT OF FACTS**

Since this is a Motion to Dismiss, the Court must proceed from the facts as pled, which are as follows:

Plaintiffs NATE McCURRAY and RONALD COONS, at all times mentioned, were and are now duly qualified voters of the State of New York residing in Grand Island, New York and Lake View, New York, respectively, and entitled to vote in Erie County, New York, and both are enrolled in the Democratic Party, and both reside in New York's 27th Congressional District. Plaintiffs sue individually and on behalf of all other enrolled voters similarly situated.

Plaintiff PAULINE GRABEKI, at all times mentioned, was and is now a duly qualified voter of the State of New York residing in Hamburg, NY, within New York's 27th Congressional District, and is entitled to vote in Erie County, New York, and is enrolled in the Republican Party. Plaintiff sues individually and on behalf of all other enrolled voters similarly situated.

NATE McMURRAY is also the Democratic nominee for Congress in the 27th Congressional District in the November 2020 Congressional District election.

Each plaintiff is also an enrolled voter, entitled to vote in the Election for Congress in the 27th Congressional District ("27th CD"), which is scheduled to conclude on November 3, 2020. They are also eligible to vote in the Presidential Election being held that same date.

Defendant ERIE COUNTY BOARD OF ELECTIONS (the "Board") is constituted pursuant to the New York State Election Law and is charged with the responsibility of administering all elections within Erie County, including the 2020 Congressional Election in the 27th Congressional District and the Presidential Election. The Board is located at 134 West Eagle Street, Buffalo, New York.

Defendants RALPH M. MOHR and JEREMY J. ZELLNER, are Commissioners of the Erie County Board of Elections.

As a result of the resignation for former Congressman Chris Collins in October 2019, voters in the 27th CD, which incorporates all or part of eight New York counties, held a Special

Election on June 23rd to fill the vacant Congressional seat until January 1, 2021. That election was won by Republican Chris Jacobs over Plaintiff McMurray by just over 8000 votes out of 156,000 votes case, approximately a 5% difference.

A second election between Jacobs and McMurray is scheduled for November 2, 2020 as part of the General Election being held that date. Since there is a presidential election on that date, turnout is expected to be greater.

Erie County includes 211,000 voters who are enrolled to vote in the 27th CD, which means that it includes 40% of the enrolled voters in the entire 27th CD. The remainder of the 27th CD includes 503,000 voters. (Source: NY State Board of Elections Website, at

https://www.elections.ny.gov/EnrollmentCD.html.)

A Special Election was originally scheduled for April 28, 2020, but was postponed, by the State Legislature, on or about April 3, 2020, until June 23, 2020 due to the COVID-19 pandemic.

In November 2018 Plaintiff McMurray ran against former Congressman Collins, and lost by a vote of 141,146 to 139,059, a margin of 1087 votes.

Effective January 24, 2019, the NY State Legislature amended the Election Law at Section 8-60 to provide, for the first time ever, for Early Voting in the State of New York. The relevant provisions of the statute provide as follows:

> *1. Beginning the tenth day prior to any general, primary, run-off primary pursuant to subdivision one of section 6-162 of this chapter or special election for any public or party position except for such an election held pursuant to title two of article six or article fifteen of this chapter, and ending on and including the second day prior to such general, primary, run-off primary or special election for such public office or party position, persons duly registered and eligible to vote at such election shall be permitted to vote as provided in this title. The board of elections shall establish procedures, subject to approval of the state board of elections, to ensure that persons who vote during the early voting period shall not be permitted to vote subsequently in the same election.*

4

2.      (a) The board of elections shall designate polling places for early voting, which may include the offices of the board of elections, for persons to vote early pursuant to this title. There shall be so designated at least one early voting polling place for every full increment of fifty thousand registered voters in each county; provided, however, the number of early voting polling places in a county shall not be required to be greater than seven, and a county with fewer than fifty thousand voters shall have at least one early voting polling place.

(b) The board of elections of each county or the city of New York may establish additional polling places for early voting in excess of the minimum number required by this subdivision for the convenience of eligible voters.

(c) Notwithstanding the minimum number of early voting poll sites otherwise required by this subdivision, for any primary or special election, upon majority vote of the board of elections, the number of early voting sites may be reduced when the board of elections determines a lesser number of sites is sufficient to meet the needs of early voters.

(d) Polling places for early voting shall be located so that voters in the county have adequate and equitable access, taking into consideration population density, travel time to the polling place, proximity to other early voting poll sites , public transportation routes, commuter traffic patterns and such other factors the board of elections deems appropriate. The provisions of section 4-104 of this chapter, except subdivisions four and five of such section, shall apply to the designation of polling places for early voting except to the extent such provisions are inconsistent with this section.

3. Any voter may vote at any polling place for early voting established pursuant to subdivision two of this section in the county where such voter is registered to vote; provided, however, if it is impractical to provide each polling place for early voting all of the election district ballots or if early voting at any such polling place makes ensuring that no voter has not previously voted early during such election, the board of elections may assign election districts to a particular early voting poll site. All voters in each county shall have one or more polling places at which they are eligible to vote throughout the early voting period on a substantially equal basis. If the board of elections does not agree by majority vote to plan to assign election districts to early voting poll sites, all voters in the county must be able to vote at any poll site for early voting in the county.

4.      (a) Polls shall be open for early voting for at least eight hours between seven o'clock in the morning and eight o'clock in the evening each weekday during the early voting period.

(b) At least one polling place for early voting shall remain open until eight o'clock in the evening on at least two weekdays in each calendar week during the early voting period. If polling places for early voting are limited to voters from certain areas pursuant to subdivision three of this section, polling places that remain open until eight o'clock shall be designated such that any person entitled to vote early may vote until eight o'clock in the evening on at least two week days during the early voting period.

*(c) Polls shall be open for early voting for at least five hours between nine o'clock in the morning and six o'clock in the evening on each Saturday, Sunday, and legal holiday during the early voting period.*

*(d) Nothing in this section shall be construed to prohibit any board of elections from establishing a greater number of hours for voting during the early voting period beyond the number of hours required in this subdivision.*

*(e) Early voting polling places and their hours of operation for early voting at a general election shall be designated by May first of each year pursuant to subdivision one of section 4-104 of this chapter. Notwithstanding the provisions of subdivision one of section 4-104 of this chapter early voting polling places and their hours of operation for early voting for: (i) a primary or special election shall be made not later than forty-five days before such primary or special election; and (ii) a run-off primary pursuant to subdivision one of section 6-162 of this chapter shall be made as soon as practicable.*

**5. Each board of elections shall create a communication plan to inform eligible voters of the opportunity to vote early. Such plan may utilize any and all media outlets, including social media, and shall publicize: the location and dates and hours of operation of all polling places for early voting; an indication of whether each polling place is accessible to voters with physical disabilities; a clear and unambiguous notice to voters that if they cast a ballot during the early voting period they will not be allowed to vote election day; and if polling places for early voting are limited to voters from certain areas pursuant to subdivision three of this section, the location of the polling places for early voting serving the voters of each particular city, town or other political subdivision.** (Emphasis supplied.)

Prior to April 3, 2020, the Erie County Board of Elections had not given eligible voters any public notice of the Early Voting locations for the April 28, 2020 Special Election, even though the Defendant Board had been deemed "essential" and had to process designating petitions for the various party primaries scheduled for June 23, 2020.

The McMurray Campaign made efforts to contact all County Boards of Election throughout May and early June to ascertain the location of Early Voting and discover the manner in which the public was being informed.

By late May 2020 all of the other county Boards of Elections other than Erie had posted on their websites the information the public needed in order to vote early, which is an alternative to voting by mail, even for those who have requested a Mail-in ballot. Annexed as Exhibit A is the

response received from Genesee County on May 30, 2020 and the information on its website. Annexed as Exhibit B is the information received from the Monroe County BOE on May 22 and the information posted on its website. Annexed as Exhibit C is the information received from the Wyoming County BOE on May 29, 2020, and the information on its website. Annexed as Exhibit D is the information posted on the Niagara County BOE website before the end of May 2020. Annexed as Exhibit E is the information posted on the Ontario County BOE website before the end of May 2020. Annexed as Exhibit F is the information posted on the Livingston County BOE website before the end of May 2020. Annexed as Exhibit G is an email which accompanied all Early Voting Information in Orleans County which was transmitted to the McMurray Campaign on June 1, 2020.

Plaintiff McMurray's staff regularly checked with the Defendants, and their staff. One such email, sent on May 28, 2020, to Justin Rooney, and Erie County BOE Deputy Commissioner, is annexed as Exhibit H. It was met with no response. Similar requests for the information requests up through June 5, 2020 were met with no response.

As of Monday June 8, 2020 the Defendant Commissioners had not caused the Defendant Board to engage in **any** communications with the enrolled voters about the dates of Early Voting, the polling locations open for Early Voting, the hours of Early Voting, or the accessibility of Early Voting locations. The Defendant Board did not even have a list of such dates, times and locations on its website, an utter abrogation of its responsibility to conduct a fair and democratic election, much less create a communications plan. This has occurred even though the Board sent out notice of the procedure for applying for an absentee ballot in early May 2020 to very voter, an action taken pursuant to an Executive Order issued by Governor Andrew Cuomo.

Because of the COVID-19 epidemic, early voting is **one** of the safe ways for citizens to engage in their right to vote. The provision of numerous dates, at numerous locations throughout the county, is a means of avoiding long lines and potentially crowded voting locations on Election Day, especially for those who for various reasons choose not to seek an absentee ballot.

Over 60% of the voters in Erie County have not applied for an absentee ballot, 380,000 out of 635,000 enrolled voters (see Board of Elections website at https://www.elections.ny.gov/EnrollmentCounty.html).

On June 8, 2020 a copy of the Complaint I this action, the Motion for a TRO and Preliminary Injunction, and a copy of the Proposed Order granting injunctive relief, was emailed, at the request of the Defendant Board of Elections, to Jeremy Toth at the County Attorney's Office. This was memorialized in a Declaration filed with the Court on the morning of June 9, 2020, when this proceeding was formally commenced. Attorney Toth indicated that the Commissioners were meeting on the evening of June 8, 2020 to discuss the then unfiled lawsuit.

On June 9, 2020, after this action was commended, for the first time, the Defendant Board of Election posted the Early Voting information.

The placement of early voting information on the Defendant Board's website four days before voting was to begin was not intended to give timely and meaningful notice to voters, it was intended to cause the dismissal of this lawsuit.

As demonstrated above, the Boards of Election in every other county in the 27th Congressional District have done far more extensive notification of voters about early voting dates, locations, and times. This means that these voters have had far more notice, and certainly more meaningful notice, of early voting information, than voters in Erie County.

As a consequence, the voters in Erie County were put at a disadvantage vis-à-vis the voters of the other seven counties.

Furthermore, candidate McMurray, who held elective office in Erie County, and whose base of support is in Erie County, was put at a disadvantage because of the laggardly manner in which Defendants gave notice to the voters in Erie County, especially as compared to the Boards of Election is all other counties in the 27th Congressional District.

Early Voting, by statute, started on Saturday June 13, 2020. The Defendants had no plan to give public notice, other than the posting on their website on June 9, 2020, and, in fact, gave the public no additional notice.

The Defendants lack of action before the April 28, 2020 cancelled election (which wasn't cancelled until April 3, 2020) , and its late and limited notice of early voting prior to the June 23rd election, makes it likely that a similar lack of public  notice will precede the November 3, 2020 election. Plaintiffs do not have to wait until it is too late to seek judicial relief.

The assistance of this Court is needed in order to compel the Defendants to carry out their responsibilities under Election Law 8-600 so that the voters of Erie County have notice about early voting qualitatively equal to that given to voters in all of the other counties in the 27th Congressional District. In order to effectively communicate a voting plan to the eligible voting population, including Plaintiffs and the class they represent, the Board, when it sends out absentee ballots to all voters beginning in September 2020, as directed by the State Legislature needs to include notice of all Early Voting locations, and dates of Early Voting in Erie County, for the 2020 General Election.

Finally, the Court should note that the denial of the Preliminary Injunction has been appealed to the US Court of Appeals for the Second Circuit, where the Court has a fully briefed

Motion to Dismiss in front of it, a motion where Defendants largely make the same arguments they argue here.

## ARGUMENT

## THE MOTION TO DISMISS SHOULD BE DENIED

### A. PLAINTIFFS STATE A FIRST AMENDMENT CLAIM

Plaintiffs, one of whom is a Congressional candidate in New York's 27th Congressional District, and two of whom are voters, one a Republican and one a Democrat, brought a **class action** lawsuit against the Erie County Board of Elections (the "ECBOE") because of its failure to notify the voting public of the dates, times and locations of early voting.  All other counties in the Congressional District had given at least 14 days' notice by their respective Boards of Election.  **After suit was filed**, the ECBOE, **four days before voting started**, posted the locations, dates, and times on its website. Plaintiffs had to adjust their pleading the day after it was filed to reflect the developing facts but continued to seek a Preliminary Injunction requiring broader public notice (newspaper ads, or postcards) due to the late posting on the ECBOE website, and also made it clear, in the First Amended **Class Action** Complaint (filed 24 hours before the Court's decision) that the Plaintiffs were seeking relief in connection with the November election.  Plaintiffs sued under First and Fourteenth Amendments.

The Congressional District (the 27th), and County involved, will be holding a General Election on November 3, 2020 where a second Congressional election will be conducted.  There is every reason to believe that voters in that election will get similarly delayed notice, which is why Plaintiffs proceed with the case below.  The operative complaint, the First Amended Complaint, alleges that the Erie County Board of Elections, given its performance in June 2020, is likely the perform similarly in October and November.

Each of the Plaintiffs is a voter who want the votes of voters in Erie County to have equal force to those in other counties, and Plaintiff McMurray wants the voters of Erie County, his home county, to have the most robust opportunity to vote under the Early Voting program. This case is unusual because the restriction on voting rights has been caused by inaction, rather than action, but it is a violation nonetheless.

The manner in which citizens vote is usually set out in state election laws, but once those rights are created those rights are protected by the free speech and associational protections of the First Amendment. The Second Circuit said in *Yang v. Kosinski*:

> The nature of the constitutional rights asserted by Plaintiffs and the Sanders delegates "is evident." As discussed above, they wish to appear on the ballot of New York's Democratic presidential primary **and they wish to vote in the primary election**. That interest "to engage in association for the advancement of beliefs and ideas" and "**to cast their votes effectively**"[46] falls squarely within the ambit of the protection afforded by the First Amendment. That interest is "an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment," which is applicable to the States.
>
> It is settled that "[t]he right to associate with the political party of one's choice is an integral part of this basic constitutional freedom [of association]… And although States have a "broad power to regulate the time, place, and manner of [such] elections," they have a " 'responsibility to observe the limits established by the First Amendment rights of the State's citizens.' "
>
> The State's power cannot be used, for example, to create barriers that unduly burden a person's right to participate in a state-mandated presidential primary. (Emphasis added)

*Yang v. Kosinski*, 2020 WL 2820179, at *7 (C.A.2 (N.Y.), 2020).

"It is well settled that the First Amendment protects "the rights of candidates and their supporters 'to organize, **access the ballot**, and vote for the candidate of their choice.' " *McMillan v. New York State Bd. of Elections*, 2010 WL 4065434, at *10 (E.D.N.Y. Oct. 15, 2010), *aff'd*, 449 F. App'x 79 (2d Cir. 2011) (citing *Rivera–Powell,* 470 F.3d at 468); *see also Anderson v.*

*Celebrezze,* 460 U.S. 780, 787–88, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *Thomas,* 898

F.Supp.2d at 598." *Tiraco v. New York State Bd. of Elections,* 963 F.Supp.2d 184, 197

(E.D.N.Y., 2013). The 2nd Circuit made this exquisitely clear in *Lopez Torres v. New York State*

*Bd. of Elections*, 462 F.3d 161, 185 (2nd Cir. 2006), where the court held: "[T]he State must

protect First Amendment rights at each "integral part of the procedure of choice," and especially

at those junctures of the electoral process that "effectively control[ ] the choice." *United States v.*

*Classic,* 313 U.S. 299, 318, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); *see also Moore v. Ogilvie,* 394

U.S. 814, 818, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969) ( "All procedures used by a state as an

integral part of the election process must pass muster against the charges of discrimination or of

the abridgement of the right to vote.")." The Court, in sweeping language, discussed the need to

protect voters' rights:

> "The Supreme Court has identified "two different, although overlapping, kinds of rights" that the First Amendment grants: " 'the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes **effectively.** Both of these rights, of course, rank among our most precious freedoms.' " *Anderson v. Celebrezze,* 460 U.S. 780, 787, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) (quoting *Williams v. Rhodes,* 393 U.S. 23, 30–31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968)). (Emphasis added.)

*Lopez Torres, supra* at 183-184.

The failure to give proper notice to the voters of Erie County, of the early voting

locations, undercut the power of the electorate of Erie County to participate in a Federal election.

As a result of the acts and omissions complained of herein, Plaintiffs suffered a deprivation of

their Federal and State Constitutional Free Speech Right, and their Suffrage Rights Under the

NY State Constitution.

The District Court did hold, in denying the Preliminary Injunction, that NY State early voting laws do not create expanded First Amendment rights, and that failure to properly publicize early voting dates and locations does not implicate First Amendment rights because the minimal actions taken by the ECBOE did not burden the right to vote.

It is Plaintiffs' plan to ask the District Court to rule on the request for an injunction addressed to the November election prior to mid-October. Although the District Court made a key holding in its Preliminary Injunction opinion, it is not the law of the case. Here is what the District Court held:

> "[V]oting directly implicates the First Amendment (as applied to the states through the Fourteenth Amendment), which protects the right to form political parties for the advancement of common political goals and ideas and the corresponding right to associate with candidates of those parties through the ballot." *Green Party of State of New York v. Weiner*, 216 F. Supp. 2d 176, 186 (S.D.N.Y. 2002) (citing *Anderson v. Celebrezze*, 460 U.S. 780, 786-88 (1983)). "It does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (citing *Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986)). Rather, "[s]tates have a 'broad power to regulate the time, place, and manner of . . . elections.'" *Yang v. Kosinski*, --- F.3d ---, 2020 WL 2820179, at *7 (2d Cir. June 1, 2020) (quoting *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 222 (1989)).
>
> In exercising that power, however, states must "observe the limits established by the First Amendment rights of the [s]tate's citizens." Id. (quoting *Eu*, 489 U.S. at 222). "The [s]tate's power cannot be used, for example, to create barriers that unduly burden a person's right to participate in a state-mandated presidential primary." *Id.* (citing *N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 204 (2008)). To that end, the Supreme Court has found unconstitutional a state statute that prohibited a person from voting in a party's primary if within the preceding twenty-three calendar months he had voted in another party's primary. *Kusper v. Pontikes*, 414 U.S. 51, 60-61 (1973). But in another case, the Court upheld a state law requiring a voter to enroll in the party of his choice at least 30 days before a general election in order to be eligible to vote in the next party primary. *Rosario v. Rockefeller*, 410 U.S. 752, 758 (1973). The Court explained that former unduly burdened voters

because it "'lock[ed]' voters into a preexisting party affiliation from one primary to the next, and the only way to break the 'lock' [wa]s to forgo voting in any primary for a period of almost two years." *Kusper*, 414 U.S. at 60-61. By contrast, the latter "did not prevent voters from participating in the party primary of their choice; it merely imposed a time limit on enrollment." *Id.* at 60.

Here, the plaintiffs allege that the defendants have violated section 8-600 of the New York State Election Law by failing to do enough to publicize the availability of early voting in the June 23rd elections. **To succeed on their First Amendment claim, they must demonstrate that their right to vote, or to have votes cast for them, in these elections has been "unduly burdened" by the Board's failure to adequately disseminate information about early voting. They are unlikely to do so.**

As an initial matter, even assuming for the sake of argument that the defendants have violated New York law, a "failure to conform to state law does not in itself violate the Constitution and is not alone actionable under [42 U.S.C.] § 1983." *Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir. 1985). **In other words, a state law does not, as a matter of course, create a constitutional right.**

The plaintiffs disagree. Relying on *Yang*, they argue that "once [voting] rights are created [by state law] those rights are protected by the free speech and associational protections of the First Amendment." Docket Item 8 at 10. But *Yang* does not stand for that proposition—at least under the circumstances here. There, the Second Circuit found that New York State's cancellation of the Democratic primary violated the plaintiffs' First Amendment rights. 2020 WL 2820179, at *7-8. As the Court explained, the "cancellation of the presidential primary has deprived [the p]laintiffs . . . not only of their right to cast a ballot in the presidential primary, but also of their right to seek an entitlement to attend the Democratic National Convention as delegates." *Id.* at *8. And "delegates have many important responsibilities, some with long-term consequences. In addition to participating in the selection of the presidential nominee, they vote on the procedural rules of the Convention; the National Democratic Party electoral platform; issues of party governance; and not insignificantly, the selection of the vice-presidential nominee." *Id.* at *7. In other words, the defendants' decision to cancel the Democratic primary deprived the plaintiffs entirely of the ability to participate in the decision-making of their chosen political party. So the state's actions would have violated the Constitution irrespective of any rights under state law.

Here, by contrast, the plaintiffs do not claim that they will not be able to vote or have votes cast for them in the June 23rd elections; instead, they contend that the defendants have not done enough to publicize information regarding early voting. **But early voting is an expansion of the right to vote; there is no constitutional right to vote prior to the election.** *See Gustafson v. Illinois State Bd. Elections*, 2007 WL 2892667, at *5 (N.D. Ill. Sept. 30, 2007) (rejecting First Amendment claim based on state's early voting law because the law "represent[ed] an expansion of voters' ability to express their political viewpoint by expanding their right to vote or, in the worst of scenarios, leaving it as it was"). **Therefore, the plaintiffs are unlikely to prove that in failing to further publicize early voting, the defendants have burdened—let alone "unduly burdened"— their right to participate in the June 23rd elections.**

What is more, the defendants now have complied with the plain text of section 8-600: they have "create[d] a communication plan to inform eligible voters of the opportunity to vote early" and posted the necessary information on their website. The plaintiffs argue that the defendants did not do that soon enough and otherwise have not done enough to satisfy section 8-600. But that is not an issue this Court should—or even can—get involved in; **it is purely a state law issue**. *See Rivera-Powell*, 470 F.3d at 469 ("When, as here, a plaintiff challenges a Board of Election decision not as stemming from a constitutionally or statutorily invalid law or regulation, but rather as contravening a law or regulation whose validity the plaintiff does not contest, there is no independent burden on First Amendment rights when the state provides adequate procedures by which to remedy the alleged illegality."). **To be sure, the Court could involve itself if the state or a state law abridged the plaintiffs' First Amendment rights in some way. But that is not that case here.** (Emphasis supplied.)

This First Amendment holding is a core issue which we seek to have this Court re-address. Basically the District Court stated in its June opinion that even though the State mandates that voters have the opportunity to vote early, that mandate does not implicate First Amendment rights, even if the Board of Elections chooses to hide voting locations from the potential voters, or makes the dates, times and locations so hard to learn about that the "right" to vote early, is illusory.

The 6th Circuit, where the **one** District Court case the District Court here relied on emanated, made it clear in an "early voting case", *Obama for America v. Husted*, 697 F.3d 423, 428 (C.A.6 2012), that the First Amendment is implicated in the manner in which early voting is carried out once a state allows early voting:

> "The right to vote is a "precious" and "fundamental" right. *Harper v. Va. State Bd. of Elections,* 383 U.S. 663, 670, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). "Other rights, even the most basic, are illusory if the right to vote is **undermined**." *Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); *see also Yick Wo v. Hopkins,* 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (finding that the right to vote is "preservative of all rights"). " 'The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise.' " *League of Women Voters v. Brunner,* 548 F.3d 463, 477 (6th Cir.2008) (quoting *Bush v. Gore,* 531 U.S. 98, 104, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000)).

Not only can the right to vote not be denied outright, it cannot be destroyed by alteration of ballots, *see United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941), or diluted by stuffing of the ballot box, *see United States v. Saylor*, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341 (1985). "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory **if the right to vote is undermined**. *Wesberry v. Sanders*, 84 S.Ct. 526, 535, 376 U.S. 1, 17 (1964).

An intentional or negligent failure by a board of election to not advise voters about when and where they can cast their early votes, undermines that right to vote, and therefore undermines the First Amendment.

## B. PLAINTIFFS STATE AN EQUAL PROTECTION CLAIM

The Equal Protection Claim arises out of a comparison to the other seven counties which are wholly or partially in the 27th Congressional District.  All gave notice by the end of May to

voters about early voting opportunities.  *None* waited until four days before early voting was scheduled to stop.  And Erie County is of particular importance to Nate McMurray.  It is his home county, the place where he has been an elected office holder, and the county where he had his best showing in the 2018 election—which he lost by 1000 votes.

We rely on a series of cases out of the Sixth Circuit where the Court addressed unequal Early Voting opportunities which have plagued elections in Ohio.  In *League of Women Voters v. Brunner*, 548 F.3d 463 (6th Cir. 2008), the Court, citing *Griffen v. Burns*, 570F.2d 1094, 1078 (1st Cir. 1978), held that the federal courts may intervene to challenge "the fairness of the official terms and procedures under which [an] election is conducted."  *Id.* At 478.

The Sixth Circuit came back to this question in 2012, in *Obama for America v. Husted*, 697 F.2d 423 (6th Cir. 2012), a case where an administrative decision prevented non-military voters from casting in-person ballots during the three days prior to the election.  The Court worked in that case to remedy what it called "picking and choosing among different voters."

The Sixth Circuit came back to the issue again in *Ohio State Conference of the NAACP v. Husted*, 768 F.3d 524 (6th Cir. 2014), this time enjoining a state-mandated reduction in all early voting because of its disproportionate impact on Black voters.

The principle of "one person, one vote" requires that courts seek to "[e]nsure that each person's vote counts as much, insofar as it [i]s practicable, as any other person's." *Hadley v. Junior Coll. Dist. of Metro. Kan. City*, 397 U.S. 50, 54, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970). "The right to vote is protected in more than the initial allocation of the franchise." *Bush v. Gore*, 531 U.S. 98, 104, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000). "Equal protection applies as well to the manner of its exercise." *Id.*; *see also Hoblock*, 487 F. Supp. 2d at 96 ("More than just the act of voting ... the counting of said vote is also guarded." (internal quotation marks and citation

omitted)). "Having once granted the right to vote on equal terms, the [s]tate may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush*, 531 U.S. at 104–105, 121 S.Ct. 525. And see *Gallagher v. New York State Board of Elections*, 2020 WL 4496849, at *18 (S.D.N.Y., 2020).

Plaintiffs have stated a viable Equal Protection Claim.

## **CONCLUSION**

Given the argument set forth above, Plaintiffs urge that the Motion to dismiss be denied.

Dated: August 18, 2020

ADVOCATES FOR JUSTICE,

By:/s/ *Arthur Z. Schwartz*
        Arthur Z. Schwartz
225 Broadway, Suite 1902
New York, New York 10007
T: (917)-923-8136
F: (212)-285-1410
aschwartz@afjlaw.com

WEBSTER & DUBS, PC
Local Counsel

By:/s/ *Joshua E. Dubs*
Joshua E. Dubs
37 Franklin Street Suite 500
Buffalo, NY 14202
T: 716-854-2050
F: 716-768-2258
josh@websterdubs.com